UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC WILLIAM
SZAFRANSKI,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 2:20-cv-10555
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 16) and AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 16), and **AFFIRM** the Commissioner's decision.

**II.     REPORT**

Plaintiff Eric William Szafranski brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his applications for Disability Insurance (DI) benefits and

Supplemental Security Income (SSI).  (ECF No. 1.)[1]  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (ECF No. 13), the Commissioner's cross-motion for

summary judgment (ECF No. 16), Plaintiff's reply brief (ECF No. 17), and the

administrative record (ECF No. 11).

A.     **Background and Administrative History**

Plaintiff alleges his disability began on March 1, 2016 (ECF No. 11-5,

PageID.200, 207; ECF No. 11-6, PageID.234), at which point he was 27 years old.

He filed his applications for disability insurance benefits (DIB) and SSI on July 21,

2017.  (ECF No. 11-5, PageID.199-216.)  In his disability report, he lists disorders

of the back and drug addiction as limiting his ability to work.  (ECF No. 11-6,

PageID.238.)  Both applications were denied on November 3, 2017.  (ECF No. 11-

4, PageID.127-142.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF

No. 11-4, PageID.1147-148.)  On January 23, 2019, ALJ Dennis M. Matulewicz

---

[1] I note that Plaintiff mentions both applications in his complaint (ECF No. 1), but appears to only challenge the denial of his application for DI benefits in his summary judgment motion (*see* "Statement of the Case," ECF No. 13, PageID.722).  Regardless, whether Plaintiff appeals the denial of one or both of his applications, the Court should find that he is not entitled to reversal or remand.  *See Craft v. Astrue*, 539 F.3d 668, 674 n. 6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case.").

held a hearing, at which Plaintiff and a vocational expert (VE), Helen Topcik, testified.  (ECF No. 11-2, PageID.69-96.)  On February 12, 2019, ALJ Matulewicz issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 11-2, PageID.56-64.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 11-4, PageID.147-148.)  However, on January 8, 2020, the Appeals Council denied Plaintiff's request for review.  (ECF No. 11-2, PageID.42-47.)  Thus, ALJ Matulewicz's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on March 3, 2020.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 460 pages of medical records, which were available to the ALJ at the time of his February 12, 2019 decision.  (ECF No. 11-7, PageID.302-764.)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2016, the alleged onset date.  (ECF No. 11-2, PageID.58.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: depression, attention deficit hyperactivity disorder (ADHD),

substance abuse disorders in remission, lumbago secondary to degenerative disc

disease, and status post spinal surgery.  (ECF No. 11-2, PageID.58-59.)  At **Step 3**,

the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (ECF No. 11-2, PageID.59-60.)  **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity

(RFC)[2] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . except he can lift 10 pounds
> maximally, 5 pounds frequently, and 10 pounds occasionally; sit 6
> hours, stand 2 hours, and walk 2 hours in an 8-hour workday; who
> should never use ladders, scaffolds, or ropes; only occasionally use
> ramps or stairs, stoop, crouch, crawl, kneel, or balance; who should
> avoid walking on uneven surfaces; ; [sic] never work with hazards,
> including dangerous/unprotected machinery or work at unprotected
> heights; occasionally bend, twist, and turn at the waist; simple,
> unskilled work with an SVP of 1 or 2; work that has occasional
> contact or discussion with coworkers; routine work that does not
> require changes or adaptations in work settings or duties more than
> once per month; work requiring occasional contact with the general
> public; and jobs without production quotas mandating a specific
> number of pieces per hour or with a downline coworker depending on
> the claimant's productivity.

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(ECF No. 11-2, PageID.60-62.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (ECF No. 11-2, PageID.62.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as sorter, final assembler, and inspector.  (ECF No. 11-2, PageID.63.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since March 1, 2016.  (ECF No. 11-2, PageID.64.)

### D.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

     **E.**    **Analysis**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence "because it fails to properly evaluate the disabling effects of [his] medically documented physical impairments pursuant to 20 CFR 404.1529(c)(3) and Social Security Ruling 16-3p." (ECF No. 13, PageID.777; *see also* ECF No. 17.) Specifically, he asserts:

> [ALJ] Matulewicz . . . found that [his] medically determinable impairments could reasonably be expected to cause pain and other symptoms. (PageID.61). Nonetheless, [ALJ] Matulewicz issued a residual functional capacity finding that [he] could perform a limited range of sedentary work on a sustained basis without the necessary analysis prescribed by law as to the affects [sic] of [his] pain, depression and ADHD have upon his ability to focus, concentrate and stay on task in order to perform sustained and substantial gainful employment.

(ECF No. 13, PageID.775.) The Commissioner opposes Plaintiff's motion, asserting that the ALJ properly evaluated Plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529(c) and SSR 16-3p, and that substantial evidence supports that evaluation and the ALJ's RFC assessment. (ECF No. 16, PageID.795-804.) For the reasons that follow, I agree.

### 1.    Standard

The plaintiff bears the burden of proof at Steps 1-4, including proving his RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health*

*and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990), and *Cole v. Sec'y of Health*

*and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r*

*of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains

the burden of proving her lack of residual functional capacity.").  The

Commissioner has the burden of proof only on "the fifth step, proving that there is

work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of*

*Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).[3]

In making an RFC determination, the ALJ must engage in a two-step process

to evaluate a claimant's symptoms.  First, the ALJ "must consider whether there is

an underlying medically determinable physical or mental impairment(s) that could

reasonably be expected to produce the individual's symptoms, such as pain."  SSR

16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. §§ 404.1529, 416.929.

"Second, once an underlying physical or mental impairment(s) that could

---

[3] Plaintiff mainly challenges the ALJ's RFC assessment in his summary judgment motion, but also states: "Herein, the ALJ found that Plaintiff was able to perform less than the full range of sedentary work activity at Step V of the Sequential Evaluation.  It is this determination that is not supported by the substantial evidence in the record as a whole and relies upon application of erroneous standards of law."  (ECF No. 13, PageID.777.)  However, he does not assert that the ALJ's hypothetical failed to match the RFC determination.  Thus, to any extent Plaintiff frames his argument as a challenge to the ALJ's Step 5 determination, he is in actuality challenging the RFC assessment.  *See Kirchner v. Colvin*, No. 12-cv-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

reasonably be expected to produce the individual's symptoms is established, [the

ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the

extent to which the symptoms limit an individual's ability to perform work-related

activities . . . ."  SSR 16-3p, 2017 WL 5180304, at *3.  To do so, an ALJ should

consider factors that include the individual's daily activities; the location, duration,

frequency, and intensity of pain or other symptoms; any precipitating and

aggravating factors; the type, dosage, effectiveness, and side effects of the

individual's medication(s); treatment beyond medication for relief of pain or other

symptoms; any measures used to relieve the individual's pain or other symptoms;

and any other factors concerning functional limitations due to pain or other

symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304,

at *7-8.

> **2.    The ALJ appropriately applied the above standard, and substantial evidence supports his findings**

For the reasons explained more fully below, the Court should find that the

ALJ appropriately applied the standard set forth in SSR 16-3p for evaluating an

individual's subjective symptoms, and that substantial evidence supports his

findings.

As part of his explanation for Plaintiff's RFC assessment, the ALJ reasoned

that:

> [T]he claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with the
> medical evidence and other evidence in the record . . . .

(ECF No. 11-2, PageID.61.)  And in so doing, he considered the record before him

far more extensively than Plaintiff suggests.

### a.      Conservative and inconsistent treatment

As Defendant asserts, the ALJ considered the conservative and inconsistent

treatment Plaintiff received for his impairments.  With regard to Plaintiff's mental

impairments, for example, the ALJ acknowledged Plaintiff's complaints of

depression and reported ADHD history, but found that the "record shows very

limited outpatient mental health care at Exhibit 3F."  (ECF No. 11-2, PageID.61.)

Indeed, Exhibit 3F demonstrates that Plaintiff sought outpatient treatment with

Oakland Family Services for "substance abuse related behaviors" and hypermania

in August 2017, and had a psychiatric evaluation in September 2017 (during which

he reported he had been seeing a therapist for the past few weeks), but this

accounts only for a two-month period between Plaintiff's alleged March 1, 2016

disability onset date and the ALJ's February 2019 decision.  (ECF No. 11-7,

PageID.323-353.)[4]  The ALJ also acknowledged Plaintiff's prior microdiscectomy,

---

[4] As Defendant asserts (ECF No. 16, PageID.797, n. 1), the record contains
medical evidence from well before Plaintiff's alleged disability onset date, much of

finding that Plaintiff had emergency room (ER) visits related to back pain, but that

those visits were "sporadic and unaccompanied by outside treatment," and may

have actually been the result of opioid abuse (ECF No. 11-2, PageID.61-62 (citing

ECF No. 11-7, PageID.302-313)), all of which is supported by the record.  As

Defendant asserts (ECF No. 16, PageID.797-798), a review of the record reveals

that Plaintiff visited the ER for back pain in June and November 2017, as well as

for a fall in June 2018 (ECF No. 11-9, PageID.632-684, 696), but visited a

specialist for such pain only twice following his alleged onset date (ECF No. 11-7,

PageID.302-313), and that this specialist believed Plaintiff may have had a

medication problem as opposed to a pain issue (ECF No. 11-7, PageID.302).

Specifically, Dr. Ellenberg's treatment records from July 2017 go so far as to state,

"It is very possible at this point that there might not even be a pain issue."  (ECF

No. 11-7, PageID.302.)  On the basis of this record, it was reasonable and

appropriate for the ALJ to conclude that "[m]ore specialized treatment and

significantly more care would be expected with disabling physical or mental

conditions" and that "the actual evidence is insufficient to conclude the claimant's

conditions or pain are as severe as claimed."  (ECF No. 11-2, PageID.62.)  *See*

*Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("minimal and

---

which the ALJ did not address in his RFC assessment (ECF No. 11-2, PageID.60-
62), and which Plaintiff does cite to in his summary judgment motion.

conservative treatment" is a valid reason to discount severity); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009) (a gap in treatment is inconsistent with a claim of disability).

### b.   Comparison between subjective complaints and objective medical evidence

The ALJ also appropriately compared Plaintiff's subjective symptoms to the objective medical evidence, and his findings are supported by the record.  As stated by the ALJ (ECF No. 11-2, PageID.61), Plaintiff's June 2018 imaging showed only "mild-moderate disc space narrowing" (ECF No. 11-9, PageID.763), and Dr. Maury Ellenberg opined in treatment notes that an abnormality found in an MRI of Plaintiff's back was indicative of scarring from his 2013 surgical procedure (ECF No. 11-7, PageID.303).  Further, Plaintiff had a normal physical examination during his June 2017 ER visit (ECF No. 11-9, PageID.644), was noted during medical examinations to walk without distortion despite his report of leg length discrepancy (ECF No. 11-7, PageID.303; ECF No. 11-9, PageID.641), and exhibited alert orientation and appropriate behavior, affect, and psychomotor during his psychiatric evaluation (ECF No. 11-7, PageID.323-326).  *See* 20 C.F.R. §§ 404.1529(a) & (c), 416.929(a) & (c); SSR 16-3p, 2017 WL 5180304, at *2 (to determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence"); *see also Newsome v. Sullivan*,

897 F.2d 529 (6th Cir. 1990) ("[I]n weighing objective medical findings versus subjective statements of pain, the objective evidence is controlling absent objective medical evidence suggesting the existence of the pain.") (citations omitted).

Plaintiff does not rebut Defendant's assertion that a majority of the medical records available need not be reviewed as they pertain to treatment Plaintiff received long before his alleged disability onset date, or cite to contrary evidence in the record of more extensive medical treatment. Instead, he argues that the ALJ relied solely on the MRI results to support his findings and the RFC assessment, which is patently inaccurate, as provided above, and that Dr. Ellenberg's treatment notes explain that his "failed back syndrome is caused by impingement upon his spinal canal resulting in pain and radiculopathy into the lower legs[.]"  (ECF No. 13, PageID.779 (citing ECF No. 11-7, PageID.303-304).)  But I do not see such a note on the page from the record that Plaintiff cites, nor is it the Court's obligation to scour the record to assist Plaintiff in supporting his arguments. *Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted).  And to the extent Plaintiff asserts that, pursuant to SSR 16-3p, the ALJ should have considered factors that may have prevented him from seeking treatment, like the inability to afford such treatment (ECF No. 13, PageID.780-781;

13

ECF No. 17, PageID.807-809), he cites to no evidence that any of those factors

existed here.  Thus, such arguments are waived as undeveloped.  *See McPherson v.*

*Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. It is not sufficient for a party to mention a

possible argument in the most skeletal way, leaving the court to ... put flesh on its

bones.") (quotation marks and citations omitted).

### c.      Consideration of subjective symptoms

Further, Plaintiff asserts that the ALJ failed to consider the subjective

evidence of his symptoms, including: statements he made in his Function Report

that, due to chronic back pain, he cannot bend, stand, sit, or lift heavy objects, and

that his hypomania and racing thoughts make him unable to focus; and his

testimony that his back pain affects his ability to focus, that he quit his last job due

to pain and muscle spasms in his back, and that he is limited to lifting no more than

ten pounds, and to walking, sitting, or standing for no longer than fifteen minutes.

(ECF No. 13, PageID.780-783 (citing ECF No. 11-2, PageID.78-80, 87, 89, 94;

ECF No. 11-6, PageID.245-252); ECF No. 17, PageID.808-809.)  However, this is

directly contradicted by the ALJ's opinion, in which he states:

> The claimant alleged he is unable to work due to a leg length
> discrepancy, pain, and muscle spasms.  He alleged he cannot lift more
> than 10 pounds or sit/stand/walk more than 15 minutes.  He admitted
> a history of substance abuse and indicated he can be judgmental and

passive aggressive towards others. He alleged that pain combined with ADHD symptoms interfere with his ability to concentrate and complete tasks. (Testimony). The evidence in the file since the alleged onset date is limited. It establishes the severe impairments above, but, as discussed below, it fails to prove the claimant cannot perform a range of sedentary work.

(ECF No. 11-2, PageID.61.) And, as provided above, substantial evidence supports the ALJ's conclusion. The Court cannot alter the outcome because Plaintiff disagrees. *See Rabbers*, 582 F.3d at 651; *see also Bass*, 499 F.3d at 509 (in deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility"); *Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

It is even more baffling that Plaintiff should assert to this Court that the ALJ ignored his subjective complaints since, the ALJ adopted and included in the RFC many of the limitations Plaintiff claimed, despite the lack of objective medical evidence in support. Specifically, the ALJ stated:

> The surgical history and pain complaints are sufficient to limit him to sedentary work with occasional postural requirement, but the intact gait and the questionable pain complaints undercut his assertion that he is incapable of sitting/standing/walking more than 15 minutes. He admitted a history of substance abuse, including opioids, and this is confirmed in the file. This warrants work without heights or hazards. Although the file does not confirm leg length discrepancy and shows intact gait, the claimant is limited to work without walking on uneven surfaces. This gives him every benefit.

15

The record shows very limited outpatient mental health care at Exhibit 3F. The primary diagnoses are substance abuse related. There are some complaints of depression, and he reported an ADHD history. Exhibit 3F assesses bipolar disorder as the independent mental disorder. He exhibited full orientation during the exams and intact cognition. However, the pain and substance abuse history warrant limitation to simple, unskilled, routine work without production pace. His testimony that he is passive aggressive and judgmental warrants work without production pace. His testimony that he is passive aggressive and judgmental warrants work with only occasional contact or discussion with coworkers and occasional contact with the general public.

(ECF No. 11-2, PageID.61.) Accordingly, the Court should find that substantial evidence supports the ALJ's RFC assessment.

### F. Conclusion

Plaintiff has the burden of proof on statements of error. *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence. For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 21, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE